No. 25,436.

THE UNION NATIONAL BANK OF MANHATTAN, *Appellee*, v. L. E. EBERT, *Appellant* (A. E. IRISH and THE KAW VALLEY STATE AND SAVINGS BANK, *Appellees*).

SYLLABUS BY THE COURT.

NEGOTIABLE INSTRUMENT—*Bank Check—Alleged Fraud—Evidence—Plaintiff an Innocent Holder for Value.* In an action to recover on a check various assignments of error considered and held to be without substantial merit.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed October 11, 1924. Affirmed.

*W. F. Challis*, of Wamego, for the appellant.

*R. P. Evans, George Clammer, Hal E. Harlan*, and *A. M. Johnston*, all of Manhattan, for appellee The Union National Bank of Manhattan; *E. C. Brookens, E. S. Francis*, and *H. L. Hart*, all of Wamego, for appellee A. E. Irish.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on a check. Plaintiff prevailed and the defendant, Ebert, appeals.

Ebert was negotiating with Irish for the purchase of a farm, and

on May 17, 1921, executed and delivered to Irish his check in the sum of $5,000. Irish negotiated the check to S. J. Pratt, who, in turn, sold and delivered it to the plaintiff. The check was drawn on the Kaw Valley State and Savings Bank of Wamego, which refused payment.

The case was tried to a jury. Ebert defended on the ground of fraud. Irish made no defense and the jury, on instructions, rendered a verdict against him for the full amount. They returned a general verdict in favor of the defendant, Ebert, and answered special questions. On motion of the plaintiff the general verdict in favor of Ebert was set aside and judgment rendered for the plaintiff on the special questions.

The parties are not agreed as to the theory on which the defense was made. The defendant contends that the fraud consisted in negotiating the check, and that the trial court failed to properly submit that question to the jury. The plaintiff contends that the theory on which the defendant proceeded was that the fraud consisted in the procuring of the check by Irish; that Ebert's answer, and the evidence adduced supported that theory; that the questions submitted to the jury were upon that theory, and that the defendant is attempting to mend his hold by now proceeding on a different theory.

The defendant's answer, in part, reads:

"For a third and further defense to plaintiff's petition filed herein, defendant says that on or about the 17th day of May, 1921, his codefendant, A. E. Irish, requested this defendant to make a check to him for the sum of $5,000, but it was expressly understood and agreed that said check should not be cashed nor negotiated by the said A. E. Irish, nor presented for payment unless the said Irish first sent or caused to be sent and deposited to this defendant's credit at The Kaw Valley State and Savings Bank at Wamego, Kansas, upon which Bank said check was drawn, a draft or other form of a deposit in the sum of $5,000 with which to meet and pay said check, and would in no event use or cash the same without first causing a like amount to be deposited to the credit of this defendant as stated above. That such promises and representations were fraudulent and intended at the time to be such by the said A. E. Irish and were so made to induce this defendant to make and deliver such check to him, and for the purpose of cheating and defrauding this defendant out of the said sum of $5,000, and defendant relying thereon, gave to the said Irish the said check. That there was no consideration for said check and this defendant received no form of consideration therefor. That the said Irish by the trick, device and false and fraudulent representations so made by him to defendant, he obtained said check from defendant. That said plaintiff at all times well knew of the manner in which the same

had been obtained from defendant by the said Irish by means of the false promises, trick and device aforesaid, that the same was without consideration and plaintiff did not receive and pay the same in the due course of business, for value, and is not a holder thereof in due course, for value, before maturity nor was said check endorsed and delivered by the holder thereof to the said plaintiff."

The answer quite clearly sets out that the "promises and representations were made to induce the defendant to make and deliver the check to him for the purpose of cheating and defrauding," etc., and that by such "trick," etc., he obtained the check from the defendant. If it were intended to allege that the fraud consisted in the negotiation of the check, rather than in its procurement, there was an unfortunate use of the language employed. While it may be said that the answer, at least inferentially, alleged fraud in the negotiation, it is also true that the court instructed along the same line as strongly as was warranted by the allegation. The evidence adduced justified the submission. The special questions which were answered by the jury warranted recovery by the plaintiff.

The special questions and answers were as follows:

"Q. Do you find from the evidence that when the plaintiff bank came into possession of the check involved in this case, it, the said bank, had any knowledge of any fraudulent transactions connected with the making and giving of the check? A. No.

"Q. Did the Union National Bank of Manhattan acquire the check in suit for value? A. Yes.

. . . . . . . . . . . . . . .

"Q. Was the check acquired from Ebert by Irish by fraudulent means? A. No.

"Q. Does the evidence show that the check in suit was paid and defendant Ebert discharged from liability? A. No.

"Q. Do you find from the evidence that a note was given to plaintiff bank signed by A. E. Irish and held by the bank together with the check and that such note would be surrendered when the check was paid? A. Yes."

There was abundant testimony to support the special findings of the jury. The two parties being engaged in a land deal, not concluded, Ebert gave Irish his check. Ebert testified, "I gave him my check. He said he wanted the check to show good faith and it would not be cashed until the deal was closed. If it was cashed before then he (Irish) would send draft ahead to take care of it." There was testimony that Pratt understood the check to have been given as a part payment on the land deal. There was no testimony showing that the plaintiff bank had any knowledge of any infirmity in the paper. If any advantage was taken of Ebert in the transaction it

must have been by Irish by his failure to send draft. The plaintiff paid full value for the check placed in circulation by Ebert, and should not be compelled to suffer loss.· The instructions sufficiently covered the issues in the case. From an examination of the whole record, we are unable to say that any reversible error was committed.

The judgment is affirmed.

JOHNSTON, C. J., not sitting.